THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| DONNA JOSEWSKI, | ) | Case No. 2:09CV00760 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I. INTRODUCTION

Plaintiff Donna Josewski filed an application for Social Security benefits alleging a disability beginning on December 31, 2005. Plaintiff was born on October 3, 1965, and was 40 years of age at the time of her alleged onset of disability.

After a hearing, an administrative law judge ("ALJ") concluded at step two of the five-part sequential evaluation process, *see* 20 C.F.R. § 416.920, *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), that Plaintiff has the following severe impairments: history of asthma, obesity, mood disorder NOS, personality disorder, history of anxiety disorder and polysubstance abuse. At step three of the evaluation process, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the Listings of Impairments (the "Listings), 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ found that Plaintiff retained the residual functional capacity, with some limitations, to perform light work. Before reaching that conclusion the ALJ first found that considering Plaintiff's impairments, including her substance abuse, she did not have the residual functional capacity to perform her past relevant work, and that Plaintiff could not perform other jobs available in significant numbers in the national economy. However, the ALJ went on to find that in the absence of alcohol and drug abuse, Plaintiff would continue to have a sever impairment or combination of impairments, but would be able to perform her past relevant work. In the alternative, the ALJ found that there are other jobs available in significant numbers in the national economy that Plaintiff could perform. Because Plaintiff was not disabled when she was not abusing alcohol, the ALJ concluded that Plaintiff's substance abuse was a contributing factor material to the determination of disability.

Plaintiff's request for review was denied by the Appeals Council and she now seeks judicial review of the decision of the Commissioner of Social Security denying her claim for benefits. Plaintiff contends that the ALJ erred in that: (1)she improperly found that Plaintiff's drug abuse and alcoholism were contributing factors material to the finding of disability; (2)she improperly evaluated Plaintiff's credibility; (3)she improperly determined

Plaintiff's residual functional capacity; and (4) she improperly determined that Plaintiff could return to her past relevant work.

## II. STANDARD OF REVIEW

The Court reviews the ALJ's decision only to determine if the factual findings are supported by substantial evidence and if she applied the correct legal standards. *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted). The Court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

## III. DISCUSSION

### A. Plaintiff's Substance Abuse as a Contributing Factor Material to the Determination of Disability

It is undisputed that the ALJ was required to evaluate Plaintiff's limitations as if she were not using alcohol and drugs.[1] However, Plaintiff contends that the ALJ erroneously found that substance abuse was a contributing factor material to the finding of disability because she mischaracterized the evidence to

---

[1] See 42 U.S.C. § 423(d)(2)(c) "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled".

3

show medical improvement for a period after Plaintiff had stopped her substance abuse. Specifically, Plaintiff complains that the ALJ stated that her "GAF score almost doubled after being detoxified from alcohol", (Tr. 21), yet the admitting and discharge diagnosis do not mention substance abuse. Plaintiff asserts, therefore, that there is no record evidence that she was undergoing alcohol detoxification.

Plaintiff's position is rejected. The Court agrees with the Commissioner that Plaintiff's first contention as to detoxification is refuted by the record.

> At admission, Plaintiff's blood alcohol level was 193 milligrams per deciliter, which equals 0.193% as expressed by fractional percentage of volume of alcohol in the blood (Tr. 286,291,295). The admitting physician assessed Plaintiff with **alcohol intoxication** and depression (Tr. 295). Her GAF score at admission was 30 (Tr. 286). The next day, Plaintiff stated that she regularly drank wine and a "fifth [of liquor] per day," and her treating physician stated that Plaintiff was undergoing **"alcohol withdrawal"** (Tr. 290-91).... At discharge on January 5, 2006, the treating physician again noted that Plaintiff's blood alcohol level at the time of admission was 193 (Tr. 286). The physician stated that Plaintiff's GAF score had improved from 30 to

4

> 59 during her hospital stay (when she was, of course, abstinent from alcohol)(Tr. 286).

Answer Br. at 18 (emphasis in original).[2]

Plaintiff also claims that the ALJ mischaracterized the evidence when she stated that "her GAF scores once she stopped drinking in June 2006 remained relatively stable across several different medical sources",(Tr. 21), citing scores of 60, 55, and 50. As the Commissioner notes, however, the ALJ observed that the GAF scores were "relatively stable", not identical. Morever, the ALJ explained that she did not give much weight to individual GAF

---

[2]. As the Commissioner further notes, Plaintiff herself acknowledges that her GAF scores increased significantly after she stopped using alcohol and drugs.
> Moreover, in Plaintiff's statement of the facts, she acknowledges that, on multiple **other** occasions, her GAF scores increased dramatically after she stopped using alcohol and drugs. After a three-week stay in the hospital in mid-2004, she was assessed with alcohol and ephedrine dependence, and it was noted that her GAF score had **tripled** (from 25-75) during her period of abstinence in the hospital (Tr. 229-38). *See* Open. Brief at 2. Similarly, after a week-long hospital stay in May 2005 (during which she was diagnosed with alcohol dependence), Plaintiff's GAF score nearly doubled (from 25 to 45)(Tr. 24) *See id.* at 3.

Answer Brief n.12 (emphasis in original).

scores but instead recognized trends across multiple scores. (Tr. 15, 21).[3]

Plaintiff's reliance on Dr. Heinbecker's statement, made after she stopped abusing drugs and alcohol, that "this woman needs intensive psychotherapy" (Tr. 304) is presented out of context and is unpersuasive. *See* Tr. 304 ("This woman needs intensive psychotherapy, which she does not receive because she is not consistent in making her appointments. She is therefore being treated solely with medications, which probably is her desire, but I think it makes her prognosis guarded"). The Commissioner properly notes that Dr. Heinbecker acknowledged that Plaintiff was receiving treatment via medication, and that he did not opine that, even with treatment, she had severe functional limitations or could not work. His opinion, therefore, is not inconsistent with the opinion of Dr. Ahmed, a treating physician, who generally noted that Plaintiff was functioning well on medications, such that she could work when receiving such treatment. *See, e.g.,* Tr. 343, 345-46, 349, 351, 408, 410, 412, 414. Impairments that can be controlled by medication or treatment will not support a finding of disability.

---

[3]The ALJ specifically stated that she "gives considerably less weight to a specific GAF score than to the bulk of other, more convincing evidence. The GAF score represents a particular clinician's subjective evaluation at a single point in time. The GAF score may vary from day to day, from time to time, and between practitioners. Finally, the GAF score is not designed for adjudicative determinations." (Tr. 15 n.1).

6

*Madron v. Astrue*, 311 Fed. Appx. 170, 180-81 (10th Cir. 2009)(citing *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir. 1997).

Plaintiff's position, that because it is not possible to separate her limitations due to substance abuse from other disorders the ALJ should have made a finding of "not material", is undermined, as the Commissioner suggests, by the evidence of record. Dr Michael Enright, Ph.D, a clinical psychologist, observed that, according to the medical records, Plaintiff's diagnoses of bipolar disorder, generalized anxiety disorder, and panic disorder "seem to have fallen away" after she stopped abusing alcohol and were not seen in recent documents from the treating source. (Tr. 34). He opined that without substance abuse, Plaintiff's severe mental impairments were unspecified mood disorder and borderline personality disorder. (Tr. 33-35). He further opined that when Plaintiff's substance abuse stopped, she did not have moderate limitations in any area, but instead she either had no limitation or only mild limitations in her functional categories. (Tr. 64-64, 68). Plaintiff's argument that the ALJ failed to consider her borderline personality disorder is unfounded. *See* Tr. 13, 19-22.

**B. Credibility**

Plaintiff next claims that the ALJ improperly evaluated her credibility. The ALJ found that Plaintiff's statements concerning the intensity, duration and limiting effects of her symptoms were

7

not entirely credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (T. 20).

"'Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)(quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). The ALJ was not required to set forth "a formalistic factor-by-factor recitation of the evidence" she relied on in evaluating Plaintiff's credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence [she] relies on in evaluating the claimant's credibility", the credibility determination is adequate. *Id*. If the ALJ disbelieved claimant's allegations, she must explain what evidence led her to conclude the claimant's allegations were not credible. *Kepler v. Chater*, 68 F. 3d. 387, 391 (10th Cir. 1995). It appears to this Court that the ALJ did exactly that (Tr. 20-22), and the Court finds nothing amounting to legal error.

The Court rejects Plaintiff assertions that: (1)the ALJ could not rely on the statements of Dr. Heinbecker because he noted that she needed treatment; (2)the ALJ could not rely on statements of Plaintiff's former boyfriend; and (3)the ALJ could not consider her continuing part-time work. The Court agrees with the Commissioner that Plaintiff's first two assertions are unsupported by reasoning

8

or authority and, therefore, should not be considered. In any event, as the Commissioner notes, the ALJ may rely on the statements of Plaintiff and others when assessing credibility and residual functional capacity. *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992). As to Plaintiff's third assertion regarding part-time work, the ALJ properly considered her part-time work in evaluating her subjective complaints of disabling impairments. *See Markham v. Califano*, 601 F.2d 533, 534 (10th Cir. 1979)("Ability to ... do some work on an intermittent basis does not necessarily establish that a person is able to engage in a 'substantial gainful activity,' but such activities may be considered ... along with medical testimony, in determining the right of a claimant to disability payments under the Act.").

**C. Residual Functional Capacity Assessment**

Plaintiff's next contention, that the ALJ's "assessments appear as conclusions...with no reasoning and no citation of specific facts", Opening Br. at 15, is also rejected.

At step four, the ALJ must consider whether the claimant's "impairment or combination of impairments prevents [her] from performing [her] past work." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)(internal quotation marks and citation omitted). In assessing Plaintiff's residual functional capacity the ALJ stated that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with

9

the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR's 96-4p and 96-7p" and she "also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-6p and 06-3p" (Tr. 20).[4] Included in the evidence considered by the ALJ is Plaintiff's own testimony, the testimony of Dr. Enright, as well as the medical record. The Court agrees with the Commissioner that "the ALJ set forth both reasoning and citation to specific facts (Tr. 19-23)", Answer Br. at 23. The Court also concludes that the ALJ's Decision generally comports with the narrative discussions requirements of SSR 96-8p. (Tr. 19-23).

### D. Determination Regarding Past Relevant Work

Finally, the Court rejects Plaintiff contention, that the ALJ improperly determined that Plaintiff could return to her past relevant work. At step four of the sequential evaluation process the ALJ found that Plaintiff has the residual functional capacity to perform light work activity with certain limitations. The ALJ, after soliciting testimony from a vocation expert, also found that Plaintiff could perform her past relevant work as a bowling alley manager and automobile salesperson.

---

[4]The lower court is generally taken at its word when it states that it has considered a matter. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)("our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter").

The following assessment by the Commissioner, accurately reflects the evidence of record.

> In the documents and at the hearing, Plaintiff described the demands of her past work (Tr. 65-66, 173). Based on that description, the vocational expert identified both the physical and mental classifications of those past jobs (Tr. 66). The expert testified that, under the ALJ's assessment of Plaintiff's RFC while sober, she could perform those jobs (Tr. 68-69). Relying on the expert, the ALJ properly concluded that Plaintiff's RFC would allow her to perform her past work (Tr. 23). Thus no error occurred.

Answer Br. at 25. The ALJ was entitled to consider vocational expert testimony as evidence of jobs Plaintiff could perform. *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir 1990).

And in any event, as the Commissioner suggests any error on this issue is harmless error. The ALJ found at step five of the analysis that Plaintiff could do other work in the national economy. Because Plaintiff does not challenge this finding, it is sufficient to demonstrate that Plaintiff was not disabled. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)(the principle of harmless error applies to Social Security disability cases).

## IV. CONCLUSION

Because, the record contains substantial evidence from which the Commissioner reasonably could conclude that Plaintiff was not disabled within the meaning of the Social Security Act, the

decision of the Commissioner as to the Plaintiff Donna Josewski is affirmed.

DATED this 19th day of May, 2010.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT